J-A23013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| GEORGE WANYO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS A. MULQUEEN AND JOHN | : | No. 521 MDA 2024 |
| KEMPS | : | |

Appeal from the Judgment Entered May 17, 2024
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s):  S-2070-10

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                    **FILED: OCTOBER 8, 2024**

George Wanyo ("Wanyo") appeals from the judgment entered on May 17, 2024, after the trial court granted a motion for summary judgment filed by John Kemps ("Kemps") and a jury determined that Wanyo had not proven damages with respect to his negligence claim against Thomas A. Mulqueen ("Mulqueen").  We affirm.

We glean the following background from the certified record.  In 2005, Wanyo began working for a fireworks company owned by Kemps.  At Kemps's encouragement, Wanyo sought to purchase a house closer to the business. With the help of a realtor, Wanyo located an available property at 1485 Schuylkill Mountain Road in Schuylkill Haven, Pennsylvania.  Both Wanyo and Kemps personally visited the property and Wanyo ultimately entered into an agreement of sale with the seller to purchase the property.

The trial court summarized the circumstances surrounding the transaction as follows:

[Before the deal closed,] a home inspection was completed by . . . Mulqueen, . . . in which there was no mention of any mold issues in the report. Although the report stated "the property has been neglected["] and a visual inspection of the property indicated that the property was in "poor condition[,]" which Wanyo confirmed in his deposition . . . , Wanyo signed the sales agreement. Based upon his income, however, Wanyo was unable to obtain financing. In an attempt to help his key employee, Kemps and Wanyo agreed that Kemps would purchase the property and then enter into a short-term lease with Wanyo to rent the property with the goal that Wanyo would be able to secure financing within six months. [The seller]'s disclosure statement for the sale was submitted but arguably deficient. However, the sale between Wanyo and [the seller] for $92,000 did not close because of Wanyo's failure to obtain financing. Wanyo and Kemps agreed that the sales agreement would be assigned to Kemps for purchase from [the seller]. The sale closed on January 29, 2008 for the $92,000 purchase price. Kemps accepted [the seller]'s disclosure statement without question [since Wanyo's realtor] had arranged for the home inspection by Mulqueen.

On February 1, 2008[,] Kemps prepared a rental agreement for the property for six months which provided for a rental payment of $501.44 per month. Saliently, Wanyo was still unable to obtain financing [at the end of the term] and he agreed with Kemps to enter into an installment sales agreement for Wanyo to purchase the property upon completion of the installment sales agreement on August 10, 2008. Remarkably, Kemps completed his seller's disclosure statement which has been submitted as summary judgment Exhibit "D".

Immediately upon the entry of the rental agreement on February 1, 2008, Wanyo took possession of the property and lived [there] until September 17, 2010 – two and one[-]half years. [Wanyo] lived in the property with his then girlfriend while he asserted that he and she became ill while living in the home. During this period of time[,] Wanyo and his friends began to renovate and improve the property[, and] Wanyo lived in the home while improving the property. In September 2010, Wanyo

contacted the Schuylkill County Weatherization Program to have [it] insulate the property. The County Weatherization agent . . . opined to Wanyo that there was mold in the [basement] and that Wanyo should immediately vacate the home . . . . Wanyo, then immediately vacated the property[,] leaving all of his personal effects behind after mold was confirmed through the report of Eagle [Industrial] Hygiene Associates, Inc. nearly two years and seven months after he began to live [in] and repair the home.

Trial Court Opinion, 2/8/23, at 2-4 (cleaned up).

Wanyo filed a suit in 2011 naming Kemps and Mulqueen as defendants, along with the seller and real estate agent. With respect to Kemps, Wanyo raised one count of breach of contract and several negligence-related counts.[1] Against Mulqueen, Wanyo asserted one count of breach of contract. Mulqueen did not respond to the complaint, and accordingly Wanyo obtained a default finding of negligence against him. The case proceeded for over a decade, with the parties taking depositions and conducting other discovery. Kemps filed a motion for summary judgment in 2022, which the court granted following briefing, and issued an order and opinion on February 8, 2023.

Thereafter, Wanyo proceeded to a jury trial relating exclusively to damages caused by Mulqueen's failure to report the mold in the property.[2] Wanyo generally provided testimony and evidence concerning improvements he made to the home while he lived there, intermittent illness he incurred while residing in the house, his discovery of the mold in late summer of 2010,

_____

[1] These included negligence, negligent misrepresentation, concealment of hazard, and premises liability.

[2] Before trial, Wanyo agreed to discontinue the actions asserted against the seller and real estate agent.

and his flight from the property. Mulqueen was not present throughout trial and offered no evidence. The jury nonetheless found that Wanyo had not proven damages. Wanyo filed a post-trial motion requesting a new trial, contending that the jury's decision was against the weight of the evidence. The trial court denied the motion and issued an opinion supporting its decision on March 13, 2024.

This timely appeal followed. Wanyo complied with the trial court's order to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b). The court thereafter entered an order directing us to its previously authored opinions.

Wanyo presents two issues for our consideration:

I.      Whether the trial court abused its discretion in denying [Wanyo]'s motion for post-trial relief and finding that the jury's verdict was not against the weight of the evidence.

II.     Whether the trial court committed an error of law and abused its discretion in granting Kemps'[s] motion for summary judgment.

Wanyo's brief at 6 (cleaned up).

In his first issue, Wanyo asserts that the trial court abused its discretion in denying his post-trial motion, which averred that the jury's zero-dollar damage award was against the weight of the evidence. This Court has stated as follows:

Our scope of review on a weight of the evidence claim is very limited. We will respect the trial court's findings with regard to credibility and weight of the evidence unless it can be shown that the lower court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

- 4 -

> This Court's review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether we believe that the verdict is against the weight of the evidence.

***Rissi v. Cappella***, 918 A.2d 131, 140 (Pa.Super. 2007) (cleaned up).

Wanyo's sole count against Mulqueen was for negligence. As indicated above, a finding of negligence was entered in favor of Wanyo after Mulqueen failed to respond to the complaint. We have held that "[e]stablishing only a breach of duty, *i.e.*, negligent conduct, does not automatically entitle a plaintiff to damages. A plaintiff also must prove causation before being allowed to proceed to the question of damages." ***Rogers v. Thomas***, 291 A.3d 865, 874 (Pa.Super. 2023). A jury may award damages for negligent conduct if it is the factual cause of a plaintiff's injuries, which our standard jury instructions define accordingly:

> Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected. A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm.

Pa.SSJI (Civ) § 13.20.

In his brief, Wanyo argues that the court erred in denying his request for a new trial because he proved both specific damages and causation. ***See*** Wanyo's brief at 15-18. He preliminarily recounts that "Mulqueen did not participate in the trial and all of [Wanyo]'s evidence was uncontested and uncontradicted." ***Id***. at 16. Wanyo then highlights the specific damage evidence that he introduced at trial, including the following: (1) photographs

of renovations he made to the house while living there; (2) an itemization of expenses for materials for improvements made, as well as estimated labor costs; (3) a list of payments made to Kemps while Wanyo was living on the property; and (4) documents showing payments made by Wanyo for insurance and real estate taxes. *Id*.

Wanyo also contends that he proved causation of harm through the testimony of Richard Schuetrum, an employee of the Schuylkill County Weatherization Program, who in 2010 found what he believed was mold on the wall. *Id*. at 17. Mr. Schuetrum also stated that he was shown a photograph by Wanyo alleged to have been taken in 2008, which displayed "black staining" on the wall. *Id*. at 17. Wayno further maintains that causation was supported by a September 2010 report from Eagle Industrial Hygiene Associates, Inc., which showed that a sample from the basement proved to contain mold, as well as deposition testimony from his treating physician that the mold "could cause" the symptoms Wanyo experienced. *Id*. at 17-18.

In denying Wanyo's post-trial motion, the trial court acknowledged that there was an entry of default judgment against Mulqueen but noted that the evidence as to damages was questionable, providing fifteen different reasons. *See* Trial Court Opinion, 3/13/24, at 3-8. *Inter alia*, it recounted that Wanyo was a self-proclaimed handyman who had taken extensive courses over a three-year period in carpentry, mill work, and residential construction, and who acknowledged that the house was not livable at the time of purchase but

that it could be made livable through work. *Id*. at 3-4. The court then considered that Wanyo never divulged the name of his girlfriend who also purportedly got sick during the relevant period, and she never testified. *Id*. at 4. Additionally, the medical deposition testimony indicated that Wanyo was not treated until 2012 or 2013, years after Wanyo left, and that at best, the mold "could" have caused the symptoms he described. *Id*. at 5-6.

Beyond this, the court stated that Wanyo fell asleep two times during trial, in the view of the jurors. *Id*. at 6. It opined that Wanyo's testimony was not wholly consistent, as he attested that Mulqueen's inspection report was only a single page, whereas the jury requested to see it during deliberations, and it came to light that the report was fifteen pages in length. *Id*. at 6. Finally, the court considered that Wanyo did not offer any evidence as to the cost of repairs arising from the time **after** he claimed to have abandoned the home or whether it was sold, including any alleged price difference because of the mold. *Id*. at 7.

Based on our review, we conclude that the trial court did not abuse its discretion in denying Wanyo's post-trial motion for a new trial. The record verifies the court's findings that Wanyo's testimony was questionable and that his evidence did not overwhelmingly support his request for damages. While Wanyo provided detailed statements concerning the updates he made to the property and estimated his own labor costs, it appears that the jury did not believe that these expenses were factually caused by Mulqueen's failure to disclose mold. In the same vein, the jurors were free to reject Wanyo's claim

that he would not have purchased the property if he had known about the mold, especially considering the fact that Wanyo knew the property was uninhabitable at the time of purchase and that it needed substantial repairs. Further, the court correctly noted that there was a dearth of evidence provided as to what Wanyo did with the property after he abandoned it, including any detriment to the value of the house. In light of its extensive review of the evidence that informed the jury's decision, the trial court did not come to a determination that was "manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence." *Rissi*, 918 A.2d at 140. No relief is due.

Wanyo next asserts that the trial court erred in granting summary judgment in favor of Kemps. We begin with our well-settled standard of review for appeals from orders granting summary judgment:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no [genuine issue as to any] material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Shellenberger v. Kreider Farms*, 288 A.3d 898, 905 (Pa.Super. 2023) (cleaned up).

The "failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of

law." *Id*. (cleaned up). However, "[i]f there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied." *Id*. at 905-06 (cleaned up). Accordingly, it is this Court's responsibility "to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder." *Id*. at 905.

In the complaint, Wanyo asserted against Kemps one count of breach of contract and four counts of various types of negligence. "Three elements are necessary to plead properly a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." ***Discover Bank v. Booker***, 259 A.3d 493, 495 (Pa.Super. 2021) (cleaned up). With respect to negligence claims:

> Four elements are necessary to establish a cause of action in negligence: a duty or obligation recognized by law; breach of that duty by the defendant; a causal connection between the defendant's breach of that duty and the resulting injury; and actual loss or damage suffered by the complainant. Establishing only a breach of duty, *i.e.*, negligent conduct, does not automatically entitle a plaintiff to damages.

***Rogers***, 291 A.3d at 874.

Further, some of the parties' arguments invoke the Real Estate Seller Disclosure Law ("RESDL"). This Court has observed:

> [The] RESDL, which became effective in 2001, requires a seller of real property, except in certain instances not present in the

case *sub judice*, to disclose to a buyer, prior to the signing of an agreement of sale or transfer, "any material defects with the property known to the seller." The term "material defect" is defined as

> A problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a structural element, system, or subsystem is near, at, or beyond the end of the normal useful life of such a structural element, system, or subsystem is not by itself a material defect.

***Hossler v. Tweedlie***, 306 A.3d 361, 376 (Pa.Super. 2023) (cleaned up).

As to his claim that the trial court erred in granting summary judgment in favor of Kemps, Wanyo sets forth the following argument in his brief in total:

> In arguing against the motion for summary judgment, [Wanyo] relied on ***Phelps v. Caperoon***, 190 A.3d 1230, 1238 (Pa.Super. 2017), in that a seller must still disclose material defects with the property despite the sales agreement for said property containing an "as is" clause. The trial court found that ***Phelps*** is inapplicable because Kemps completed a seller disclosure statement, where the seller in ***Phelps*** failed to complete a seller disclosure statement due to the "as is" clause. However, the trial court erred by failing to determine whether Kemps knew there was mold in the property and disclosed said mold. Kemps only stated in the disclosure statement that the basement had dampness but he failed to disclose the mold. Kemps was present at Mulqueen's home inspection, in which [Wanyo] took a photograph showing black staining on the walls. The court erred by finding ***Phelps*** inapplicable solely because Kemps filled out a seller disclosure statement but failed to recognize whether Kemps knew of mold and failed to disclose.
>
> A genuine issue of material fact exists as to whether Kemps knew there was mold in the property and failed to disclose it.

Wanyo's brief at 19-20 (cleaned up). Notably, Wanyo does not discuss the elements of the claims he brought against Kemp, nor does he cite any portion of the record demonstrating that Kemps had knowledge of the mold other than Kemps's mere presence at the same inspection Wanyo attended.[3]

In its opinion, the trial court held that **Phelps** is not dispositive because here, Kemps provided a seller disclosure statement containing "as is" disclaimer language, unlike the seller in **Phelps**. **See** Trial Court Opinion, 2/8/23, at 10. It further noted that Kemps had only been in possession of the property for three days before Wanyo moved in under the six-month lease agreement. **Id**. Based on this, the court opined that Kemps relied on Mulqueen's inspection report, just as Wanyo did. **Id**. at 11.

For his part, Kemps argues that Wanyo failed to produce evidence that Kemps knew of any mold on the property or that that any such abnormal or dangerous mold existed in 2008, at the time of the transfer. **See** Kemps's brief at 11. He maintains that the presence of mold alone would not constitute a "material defect" pursuant to the RESDL unless it was unusual or hazardous in nature. **Id**. (citing 68 Pa.C.S. § 7303). Kemps further avers that the only evidence supporting the existence of mold was a report from 2010, over two

---

[3] In setting forth the factual background of the case, Wanyo cites to his testimony in the damages trial against Mulqueen, which was made nearly a year after the trial court granted summary judgment in favor of Kemps. He does not direct us to any of the deposition transcripts or other discovery responses in this case that would have been before the court at the time it ruled on Kemps's summary judgment motion.

and one-half years after Kemps initially purchased the property, which does not bear on the mold's presence in 2008. *Id*. at 13.

Additionally, Kemps asserts that by entering into the installment contract, Wanyo became the equitable owner of the property, much like a mortgagor, and therefore would bear responsibility for any mold he was exposed to during that time. *Id*. at 16-18. Kemps furthermore contends that the contract claim fails because there was no implied duty of good faith, as the parties expressly contracted the "as is" condition. *Id*. at 19-20. He argues that this is bolstered by Wanyo's deposition testimony, wherein he acknowledged that the house was neglected and unlivable at the time it was purchased. *Id*. at 22.

Upon review, we cannot conclude that the trial court erred in granting Kemps's motion for summary judgment. To begin, Wanyo's scant and unsupported argument fails to demonstrate that there was sufficient evidence for a jury to find Kemps liable for breach of contract, negligence, or the other negligence-related counts raised within the complaint. By way of example, he makes no discussion of the implied covenant of fair dealing, upon which his breach of contract claim relies. *See* Complaint, 9/2/2011, at ¶ 32. Wanyo similarly does not discuss how his premises liability claim is affected by the rental and installment agreements at play and their disclaimer language. In short, he leaves it for this Court to connect the dots as to his arguments on appeal, while failing to cite law or the record. That we will not do. *See Interest of D.C.*, 263 A.3d 326, 336 (Pa.Super. 2021) (stating that this Court

"will not act as counsel and will not develop arguments on behalf of an appellant"); Pa.R.A.P. 2119 (requiring that the argument section of briefs be "followed by such discussion and citation of authorities as are deemed pertinent").

Moreover, it is clear that Kemps was entitled to judgment as a matter of law. As Kemps highlights, the only evidence that there was mold in the home came from the report made in late summer of 2010. The report did not opine as to how long the mold had been there. Based on this evidence, a jury would be required to speculate that any was present in the house in February 2008, when Wanyo first took possession of the property, or in August 2008, when Kemps transferred the property to Wanyo through the installment agreement. Furthermore, Wanyo's only basis to claim that Kemps had knowledge of any mold was his mere presence at an inspection, which by Wanyo's own assertions, was bereft of any discussion or acknowledgment of mold. Without evidence of that knowledge, Wanyo could not establish either breach of a contract or breach of any duty required to show negligence. Accordingly, we find that the record "contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder." **Kreider Farms**, 288 A.3d at 905.

Based on the arguments presented, we do not have cause to disturb the judgment.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/08/2024