J-A26006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DEDICATED NURSING ASSOCIATES, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MIDWEST GERIATRIC MANAGEMENT, LLC D/B/A MGM HEALTHCARE; MIDWEST GERIATRIC MANAGEMENT, LLC D/B/A FRANKLIN WOODS HEALTH CARE, LLC; FRANKLIN WOODS HEALTH CARE, LLC D/B/A FRANKLIN WOODS NURSING AND REHABILITATION CENTER; FRANKLIN WOODS LEASING, LLC; AND PROVIDENCE HEALTHCARE MANAGEMENT, INC. D/B/A WOODVIEW CARE AND REHABILITATION | : : : : : : : : : : : : | No. 372 WDA 2024 |

Appeal from the Order Entered March 5, 2024
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  Case No. 5630 of 2017

BEFORE:  BOWES, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:          **FILED: February 28, 2025**

Dedicated Nursing Associates, Inc. ("DNA") appeals from the order granting its motion for determination of finality with respect to the trial court's grant of partial summary judgment in favor of Midwest Geriatric Management, LLC d/b/a MGM Healthcare and d/b/a Franklin Woods Health Care, LLC ("MGM").  We affirm.

We glean the following background from the certified record.  On November 22, 2016, DNA entered into an agreement with Franklin Woods

Health Care, LLC ("FWHC"), d/b/a Franklin Woods Nursing and Rehabilitation Center ("Franklin Woods"), to provide nursing staff and related services. FWHC purportedly did not render full payment under the contract, and DNA tried unsuccessfully for several months to collect on the amount owed, which exceeded $75,000. During communications with counsel for FWHC, DNA was informed that FWHC had transferred control of the nursing facility to several other entities and had then gone out of business. The primary legal document effectuating the transfer was an Operations Transfer Agreement ("OTA"), which was executed by a Judah Bienstock on behalf of, among other companies, FWHC. Critically, MGM, the appellee herein, was not listed on the OTA anywhere. Additionally, Mr. Bienstock, although alleged to be affiliated with MGM, did not conduct any action on behalf of MGM as part of the transfer of Franklin Woods.

DNA subsequently filed a complaint against FWHC and MGM, asserting one count of breach of contract against each entity. Therein, DNA stated its belief that MGM "owned and operated" FWHC at the time of the breach. During the pendency of the matter, DNA amended the complaint two additional times, and the parties engaged in discovery.[1] The third amended complaint stated four counts against MGM: breach of contract as a third-party beneficiary, breach of contract based on joint and several liability, unjust enrichment, and actual fraud pursuant to 12 Pa.C.S. § 5104 of the Pennsylvania Uniform

---

[1] The third amended complaint named several other defendants; however, they are not implicated in this appeal.

Voidable Transfer Act ("PUVTA"). By the actual fraud count, DNA sought to set aside FWHC's transfer of Franklin Woods. DNA more particularly contended that Mr. Bienstock was both a managing member of FWHC and the owner and registered agent of MGM, and that his actions relating to the transaction were taken on behalf of both entities.

MGM filed a motion for summary judgment as to all counts. After considering briefs and argument, the trial court granted the motion as to the breach of contract claims but denied it as to unjust enrichment. After the court was informed that it had not disposed of the claim for actual fraud, it entered an amended order on January 8, 2023, granting summary judgment as to that count. DNA subsequently filed a motion for determination of finality pursuant to Pa.R.A.P. 341(c)(1), which the court granted.

This timely appeal followed. Both DNA and the trial court complied with Pa.R.A.P. 1925. DNA presents two issues, which we have reordered for ease of disposition:

1. Whether [MGM]'s motion for summary judgment should not have been granted as to actual fraud when a genuine issue of material facts exists as to whether [MGM] caused the transfer of the skilled nursing facility at issue in this matter.

2. Whether [MGM]'s motion for summary judgment should not have been granted as to actual fraud when a genuine issue of material fact exists as to whether [MGM] is a "debtor" as contemplated by the [PUVTA] pursuant to 12 Pa.C.S. § 5101(b).

DNA's brief at 5-6.

We begin with the legal principles applicable to summary judgment:

- 3 -

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no [genuine issue as to any] material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Shellenberger v. Kreider Farms*, 288 A.3d 898, 905 (Pa.Super. 2023) (cleaned up).

The "failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." *Id*. (cleaned up). However, "[i]f there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied." *Id*. at 905-06 (cleaned up). Accordingly, it is this Court's responsibility "to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder." *Id*. at 905.

Here, DNA asserted against MGM one count of actual fraud pursuant to § 5104(a)(1) of the PUVTA.[2] This section is derived from the former Uniform Fraudulent Conveyance Act, the primary purpose of which was "to protect

---

[2] Prior to an amendment, PUVTA was known as the Pennsylvania Uniform Fraudulent Transfer Act. *See* 12 Pa.C.S. § 5101(a) (in effect February 1, 1994 to February 19, 2018).

unsecured creditors against transfers and obligations injurious to their rights[.]" 12 Pa.C.S. § 5101, cmt. 3. Generally, under the PUVTA, "[i]f a creditor proves that a transfer was fraudulent under [§] 5104 . . ., he may have the transfer set aside to the extent necessary to satisfy his claim." ***Xtreme Caged Combat v. Zarro***, 247 A.3d 42, 48 (Pa.Super. 2021) (citation omitted).

The specific section relied upon by DNA provides as follows:

> **(a) General rule.--**A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, **if the debtor made the transfer** or incurred the obligation:
>
> > (1) with actual intent to hinder, delay or defraud any creditor of the debtor[.]

12 Pa.C.S. § 5104 (emphasis added). Therefore, beyond showing an intent to hinder, delay, or defraud, to succeed on its claim DNA was required to establish both that MGM was a "debtor" and that it made the transfer of Franklin Woods.

In its first issue, DNA argues that summary judgment was inappropriate since there was a factual dispute as to whether MGM transferred the control of Franklin Woods to another entity before FWHC shut down operations. ***See*** DNA's brief at 16. Next, and relatedly, it contends that the court incorrectly determined that MGM did not satisfy the definition of being a "debtor" as required by the PUVTA. ***Id***. at 12-16. In support of its first claim, DNA notes the following averments from its third amended complaint demonstrated a

- 5 -

question as to whether there was a fraudulent transfer of Franklin Woods: (1) MGM "owned and operated" the nursing facility in question; (2) MGM "caused the transfer" of control of the facility from FWHC to other entities; (3) Mr. Bienstock was both the owner of MGM and the signatory of the OTA and bill of sale that shifted control of Franklin Woods; (4) and MGM delayed payments due to DNA until FWHC went out of business immediately after the transfer. *Id*. at 16-17.

Beyond these allegations, DNA also highlights evidence from discovery purporting to buttress its claim that MGM caused the transfer of Franklin Woods. It points to an MGM employee handbook which demonstrated that MGM "owned, operated[,] and had the ability to effectuate a transfer, sale[,] or conveyance" of the nursing facility. *Id*. at 17. DNA also proclaims in its brief, without citation or discussion, that MGM's written discovery responses raise a dispute of fact. *Id*. It further argues that a factual dispute was presented through the deposition testimony of Mr. Bienstock, as MGM's corporate designee, since he stated that he believed that "[FWHC] still exists" despite it having "gone out of business." *Id*. Finally, DNA asserts that a judgment entered in an Ohio trial court against MGM "from an analogous fact pattern to the instant matter" raises a genuine issue of material fact. *Id*. at 18; 9-10 (identifying without significant discussion a case involving Agera Energy as the plaintiff against Christopher Coleman d/b/a MGM).

In its Rule 1925(a) opinion, the trial court indicated that DNA did not set forth evidence relating to MGM having **caused** the transfer in question,

regardless of any showing that MGM may have held some ownership interest as to either FWHC or Franklin Woods itself. It examined the OTA and bill of sale and noted that they were executed by Mr. Bienstock as part of the transaction on behalf of several businesses, none of which was MGM. **See** Trial Court Opinion, 5/22/24, at 5. The court stated that "[e]ven if Mr. Bienstock also served in some capacity for MGM, the documentation does not evidence any action taken by [him] on behalf of MGM." **Id**. It also found that the other proof cited by DNA, including discovery responses, the employee handbook, and the like, "may establish an ownership interest between MGM and Franklin Woods, but none of that . . . changes the fact that the transfer at issue, which [DNA] seeks to have set aside as fraudulent, was done completely by [FWHC] with no alleged or established involvement of MGM." **Id**. at 5-6. The court therefore concluded that without proof of this element, DNA could not succeed on its actual fraud claim.[3]

For its part, MGM likewise contends that DNA's own documentation verifies that FWHC made the transaction in question, not MGM. **See** MGM's brief at 12. It accuses DNA of relying solely on its pleadings to survive summary judgment, instead of adducing relevant evidence. **Id**. at 12-13. MGM faults DNA for claiming that certain discovery responses support its claim without specifying or discussing them. **Id**. at 15. It also maintains that

---

[3] We note that within its third amended complaint, DNA did not seek to pierce the corporate veil so as to tie Mr. Bienstock's actions on behalf of FWHC to MGM.

whether Mr. Bienstock believed that FWHC survived as an entity after the transaction involving Franklin Woods has no bearing on whether MGM caused the transfer. *Id*. at 16. MGM finally states that DNA took no steps to adequately explain on appeal how an Ohio case involving Agera Energy and a motion for summary judgment filed by it as a plaintiff was applicable to this case. *Id*. at 16-17.

Upon review, we conclude that the trial court did not commit an error of law or abuse its discretion in dismissing DNA's actual fraud claim. Assuming for the sake of argument that MGM satisfied the definition of a "debtor" pursuant to the PUVTA, as DNA contends, we nevertheless agree with MGM and the court that DNA has failed to prove MGM's involvement in the purportedly fraudulent transaction in dispute. At bottom, DNA argues that it alleged sufficient facts demonstrating that: (1) MGM had control over Franklin Woods and/or FWHC through Mr. Bienstock; and (2) evidence produced throughout discovery showed that MGM had the power to effectuate the transfer of Franklin Woods. However, even accepting that as true, that is not enough to survive summary judgment.

A defending party is required to do more than rest upon the allegations in the complaint. *See*, *e.g.*, *Finder v. Crawford*, 167 A.3d 40, 44 (Pa.Super. 2017) ("Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment."). The burden was therefore on DNA to provide evidence, beyond the averments in its complaint, that MGM caused the

transfer of control of Franklin Woods. At best, DNA demonstrated that MGM had some authority over Franklin Woods, either directly or through its ownership interests in FWHC. The trial court correctly noted that proof of MGM having **the ability** to sell or transition Franklin Woods was not evidence that it, in fact, did so here.

Rather, the documents relied upon by DNA make it clear that MGM was not involved in the deal in any capacity. The OTA was executed by six different entities listed as the Current Operator of Franklin Woods and six other entities as the New Operator to take over control. MGM was not identified in the agreement. Further, Mr. Bienstock, who executed the OTA as a manager on behalf of FWHC and the Current Operator companies, did not execute any document on behalf of MGM. In short, while DNA may have adduced evidence showing that MGM perhaps had the power to effectuate this transaction, there is no evidence that it exercised that power and made the transfer. Without this, DNA cannot succeed on its PUVTA actual fraud claim as a matter of law. **See** 12 Pa.C.S. § 5104(a)(1) (permitting a court to set aside a transfer "if the debtor made the transfer").

Additionally, to the extent that DNA suggests in its brief that written discovery responses provided material evidence to overcome summary judgment, it failed to develop this position on appeal. It did not cite or analyze any specific discovery responses, and we will not do so on DNA's behalf. **See** ***9795 Perry Highway Management, LLC v. Bernard***, 273 A.3d 1098, 1103

(Pa.Super. 2022) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant." (citation omitted)).

Ultimately, we agree with the trial court that DNA did not establish a *prima facie* case of actual fraud, and therefore there was "no issue to be decided by the fact-finder." **Shellenberger**, 288 A.3d 905. As a result, summary judgment was properly entered in favor of MGM as to that count.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/28/2025