671 A.2d 1166

**Shirley GRAY**

v.

**Alice M. GRAY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1995.

Filed Feb. 23, 1996.

Reargument Denied April 29, 1996.

---

458

Deborah L. Barr, Towanda, for appellant.

Ray DePaola, Towanda, for appellee.

Before DEL SOLE, SAYLOR and HESTER, JJ.

HESTER, Judge:

Appellee, Shirley Gray, instituted this action for specific performance of an agreement for the sale of land against her mother-in-law, Alice Gray, on June 25, 1993. Alice Gray, appellant, contends that the equity court's decision awarding specific performance of the contract was erroneous in a number of respects. We affirm.

The important facts in this case are not in dispute. They largely are resolved by the contract entered by the parties and admissions contained in appellant's deposition. Appellee was married to appellant's son, Larrison, who died in January, 1993.

On December 17, 1976, appellant agreed to sell a farm to Larrison and appellee. The contract was recorded in the Recorder of Deeds Office of Bradford County on March 7, 1977. The contract obviously was entered in large part due to the relationship among the parties since its terms are liberal in favor of Larrison and appellee. The contract provides that appellant agreed to sell to Larrison and appellee the farm for the total sum of $40,000, $100 of which appellant acknowledged that she received on December 17, 1976.

The contract provides that payment of "the balance of the purchase price of Thirty-nine Thousand Nine Hundred ($39,-900.00) Dollars *shall bear no interest* on the unpaid balance and will be amortized over a period of 33–⅓ years or less."

Article of agreement, 12/17/76, at 1 (emphasis added). The principal amount was to be paid in 399 monthly installments of $100 each, "the entire amount to be applied against principal." *Id.* The first payment was due on January 1, 1977, and successive monthly payments were due on the first day of each month thereafter. Under the agreement, any major improvements to the farm were to be deducted from principal.

Appellee and her husband made twenty of the monthly payments, and Larrison made $800 in additional payments. Appellee and Larrison also continued to live on the farm without incident, paying taxes and also paying insurance until the property became uninsurable. After Larrison died, however, appellant and appellee had a dispute because appellant failed to honor the contract. Appellee wanted to tender the unpaid balance under the contract and have the land transferred into her name. Appellant wanted Larrison's son on the deed, which appellee did not want.

The parties' depositions were taken, and we examine appellee's deposition first. Appellee and her husband lived on the land from December 17, 1976, until Larrison died on January 17, 1993, when appellee went to live with her daughter for approximately ten months. Appellee's daughter lives across a hill from the property. Initially, appellee intended to move back to the farm, but she broke her ankle severely and could not negotiate the steps. Appellee then moved into the same house in which appellant resided. Appellant then went to live in a personal care home.

Appellee knew that the payments under the contract had stopped, but she was not aware of how much was owed under the contract because appellant kept the records and Larrison made the payments directly to appellant. She testified that she and Larrison paid the real estate taxes and the insurance until the property became uninsurable just prior to her husband's death.

After Larrison's death, appellee spoke with appellant about the property approximately five times. The first time they spoke about paying off the balance due under the contract,

appellee told appellant if she "would get a figure up, that we would pay her. I had the money, and I wanted to get it paid." Deposition of Shirley Gray, 7/13/94, at 14. Another time, appellee offered "[appellant] a check to settle—pay it up, yes." *Id.* at 15. Appellee indicated, "I just told her that I would make the check out, and I've got the money and I wanted to pay it." *Id.* at 16. Appellant refused to accept any money and never offered an explanation. Appellee was not able to determine how much she owed since she and her husband had failed to keep their ledger of the transaction current. Appellee stated that appellant kept the complete ledger of the payments.

Appellant's deposition confirms appellee's deposition in all material respects. Appellant signed the agreement, and from November, 1976, until Larrison died, her son and daughter-in-law resided on the farm. She recalled the terms of the land contract clearly, stating, "Well, they're supposed to pay me a hundred dollars a month. That was the agreement. They had the privilege of—if they wanted to pay it up at any time, I would accept it or if I wanted to demand payment at any time, why, they would accept that." Deposition of Alice Gray, 7/13/94, at 9.

Appellant stated that twenty monthly payments were made and admitted that she kept the complete record of the payments, as follows. "They had signed receipts, but I kept the receipt book. Larry also gave me, at two different times, two hundred dollars besides that, and that's recorded on the next page there." *Id.* at 10. At another time, Larrison sold logs and stones from the land and from those two sales, he paid appellant $400. *Id.*

Appellant never attempted to declare the agreement void due to non-payment because Larrison "wanted the place. It was home, and he was a great homebody from the time he was a little kid. He wanted the home, and I wanted him to have it." *Id.* at 12. She said that she had made the arrangements to have the contract drafted so that Larrison "could have the place." *Id.* at 13. After this statement, the following exchange occurred:

Q   So is it fair to say that you wanted him to have the farm whether he—

A   Very definitely.

Q   —paid you or not?   Whether he paid you or not.

A   Right.

If I hadn't had three other children, I probably would have given it to him long before that.   Because, you know—As I say, he was the one that wanted it.   He wanted to keep it as a farm, and that was the way I wanted it, and that was the way my husband wanted it.

*Id.* at 13.   Appellant testified that the only reason she would not deed the property to appellee was that she wanted her grandson to be on the deed:

Q   Alice, you would not have given her a deed no matter what price she paid to you if Wade [, the son of Larrison and appellee,] was not included;   isn't that true?

A   That's right.

Q   So, if we're honest with each other, this lawsuit really isn't—you're not claiming that she wouldn't pay when the money was due, because you let that slide all of these years.

A   Right.

Q   Your gripe is that Wade is not being included.

A   He is not coming into what I considered rightfully his.

Q   That's why you're refusing to give a deed to Shirley no matter what she pays to you.

A   Right.

*Id.* at 18.

Appellant admitted that appellee and Larrison paid the real estate taxes on the property from 1976 to the present and that appellee had offered to pay off the entire balance during the conversations that followed Larrison's death.   Appellant also acknowledged that appellee refused to tender the full contract price *only* after appellant indicated that she wanted her grandson's name on the deed.   *Id.* at 16–17.   Finally, appellant said that she refused to give appellee the final figure as to what was required for full tender.

Based on the contract and these depositions, the equity court awarded appellee specific performance under the contract upon tender by appellee of the outstanding balance due under the contract, $37,200. This appeal followed.

Appellant first contends that the trial court improperly refused to allow her to raise the defense of laches. Initially, we note that this contract is not due to expire until 2009; thus, there is no question that it is timely under the statute of limitations applicable to contracts. However, the law is that even when an action is timely under the applicable statute of limitations, the equitable doctrine of laches can be applied as a bar to the action.

The doctrine of laches, however, will not be applied unless two conditions are satisfied. The complaining party must be guilty of a want of due diligence in failing to assert his rights *and* the failure must have worked to the *prejudice* of the party seeking its application. See *Sprague v. Casey*, 520 Pa. 38, 550 A.2d 184 (1988); *Doppler v. Doppler*, 393 Pa.Super. 600, 574 A.2d 1101 (1990). The doctrine should be applied only in cases where evidence supporting such a claim is clear. See *Fuisz v. Fuisz*, 386 Pa.Super. 591, 563 A.2d 540 (1989), *reversed on other grounds*, 527 Pa. 348, 591 A.2d 1047 (1991).

Herein, appellant makes one argument in favor of application of laches. "[A] review of the record as a whole indicates that the claim for laches is a viable one as Alice may be able to prove that Shirley left the property without making a tender, had not maintained the insurance." Appellant's brief as 10. Thus, it is clear that appellant bases her application of laches on the fact that appellee may have breached the contract. She certainly makes no attempt to establish prejudice.

Under the above case law, laches will be applied only where the defending party has changed his position in reliance upon the inaction of the complaining party. Appellant, who bears the burden of establishing her entitlement to appellate relief, has not only failed to indicate how she changed her position in reliance upon appellee's breach of the contract, she

has failed to cite to a single case applying the doctrine of laches and to set forth the elements of the doctrine itself.

We remind appellant that

"The argument shall be followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a), 42 Pa.C.S.A. Arguments that are not appropriately developed are waived. *Nimick v. Shuty,* 440 Pa.Super. 87, 100, 655 A.2d 132, 138 (1995); *Smith v. Penbridge Assoc., Inc.,* 440 Pa.Super. 410, 427, 655 A.2d 1015, 1024 n. 12 (1995). Appellant has failed to cite any authority in support of his contention.... Thus, we deem that claim waived.

*Gallagher v. Sheridan,* 445 Pa.Super. 266, 270–71, 665 A.2d 485, 487 (1995) (footnote omitted). It is the appellant who has the burden of establishing his entitlement to relief. *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984) (the appellant has the burden to demonstrate the trial court's decree is erroneous due to the evidence or the law). In light of the cursory treatment of this contention and the failure to offer any elaboration or citation to relevant case law or the record, we decline to consider the merits of this claim. *Hercules v. Jones,* 415 Pa.Super. 449, 609 A.2d 837 (1992) (where appellant presented a position without elaboration or citation to case law, we declined to address phantom argument); *see also Taurino v. Ellen,* 397 Pa.Super. 50, 58, 579 A.2d 925, 930 (1990).

Appellant also contends that the chancellor erred in finding that appellant "waived any damages under this land contract" by not commencing a separate action. Appellant's brief at 10. Appellant has attempted to obfuscate this issue due to the obvious lack of merit of her claim. In fact, the equity court did not state that appellant waived *any* damages. It awarded appellant the *full* measure of her damages, *viz.* the amount of principal due under the contract. The only measure of damages which she was not permitted to recover was interest on the unpaid principal. In fact, it is apparent that the failure to award her interest on the $37,200 is the only complaint that she has with respect to damages. *See* Appellant's brief at 11–12.

■ . Meanwhile, appellant is not entitled to interest under this contract, and it is not an element of damages that can be awarded under her counterclaim, which was for breach of contract. The contract provides that payment of "the balance of the purchase price of Thirty-nine Thousand Nine Hundred ($39,900.00) Dollars *shall bear no interest.*" Article of agreement, 12/17/76, at 1 (emphasis added). The principal amount was to be paid in 399 monthly installments in the amount of $100 each, "the entire amount to be applied against principal." *Id.* Appellant admitted in her deposition that she was not entitled to interest under the contract, saying "[Larrison and appellee] had the privilege of—if they wanted to pay it up at any time, I would accept it or if I wanted to demand payment at any time, why, they would accept that." Deposition of Alice Gray, 7/13/94, at 9. As the contract clearly prohibits interest, the equity court was correct in failing to award that as a measure of damages.

Appellant was awarded the full amount that she was due under the contract, in accordance with her own deposition. In that deposition, she stated that her son made twenty $100 payments, one $400 payment, and two $200 payments. The court awarded her the balance due under the contract of $37,200.

■ Appellant next claims that the equity court erred in concluding that tender had been made, stating:

> [A] review of the record indicates that [appellee] had the ledger which indicates that only $2,400 had been paid on the land contract. (Complaint at Exhibit B). Despite having this document in her possession, [appellee] requested that the Chancellor direct that [appellant] convey the property for $35,000.00 (Complaint, Para. 6 & 7). For this reason, there was never a full tender of the balance of the contract price by Shirley Gray contrary to the findings of the Chancellor.

Appellant's brief at 14. This argument contains two misstatements of fact. First, appellant admitted in her deposition that appellee did not have a complete record of the payments,

stating, "They had signed receipts, but I kept the receipt book. Larry also gave me, at two different times, two hundred dollars besides that." Appellant said that Larrison also gave her an additional $400 after he sold some items from the land. *Id.* at 10. Thus, appellant admitted that her son privately gave her payments totalling $800. While appellee admitted she had a ledger, she also knew that Larrison had made payments, not put them in the ledger, and she did not know the amount of the payments. Indeed, the amount listed as due in the complaint was an approximation. Appellant also admitted that she refused all offers of money and that it would not have mattered what appellee offered, she would not have complied with the terms of the contract. Thus, the record belies appellant's assertion that appellee should have known of the outstanding balance on the loan and could have tendered the proper amount.[1]

Appellant's final claim is that the contract is not enforceable due to appellee's breach of the agreement by failing to make the required payments thereunder. However, the law is that a purchaser's default in making payments under a land contract may be waived either by express agreement or by the words or conduct of the seller. *Wilson v. King of Prussia Enterprises, Inc.*, 422 Pa. 128, 221 A.2d 123 (1966); *Davis v. Laurenzi*, 263 Pa.Super. 71, 397 A.2d 1 (1978). If the seller waives the purchaser's default, he may not thereafter take advantage of it by seeking rescission of the contract on the ground of late payment. *Cohn v. Weiss*, 356 Pa. 78, 51 A.2d 740 (1947); *Davis v. Laurenzi, supra*. Herein, appellant admitted in her deposition that she elected not to treat her son's failure to make payments under the contract as grounds for its rescission. She said that if he would have

---

1. We are aware that the equity court granted summary judgment in this action based upon testimonial evidence. However, summary judgment may be granted if the moving party supports his motion for summary judgment by the use of depositional admissions of the *opposing* party. *Rivoli Theatre Co. v. Allison*, 396 Pa. 343, 152 A.2d 449 (1959); *Garcia v. Savage*, 402 Pa.Super. 324, 586 A.2d 1375, 1378 n. 3 (1991). Herein, the propriety of the order is apparently based on the contract language and appellant's deposition. Therefore, summary judgment can be upheld.

come forward to enforce the contract at any time during his lifetime, she would have transferred the property to him. Thus, the equity court correctly determined that the failure to make timely payments did not entitle appellant to rescind the contract.

In *2401 Pennsylvania Avenue Corp. v. Federation of Jewish Agencies*, 319 Pa.Super. 228, 242–43, 466 A.2d 132, 139 (1983), we stated, "Whether a breach is so substantial as to justify an injured party's regarding the whole transaction as at an end 'is a question of degree; and it must be answered by weighing the consequences in the actual custom of men in the performance of contracts similar to the one that is involved in the specific case.' 4 Corbin, Contracts, § 946 (1951)." The Restatement (2d) of Contracts provides that the following circumstances are relevant in determining whether a failure is material:

§ 241. Circumstances Significant in Determining Whether a Failure Is Material

In determining whether a failure to render or to offer performance is material, the following circumstances are significant:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Herein, appellant expected to receive $40,000, without interest, by 2009 under the contract. She will receive this benefit. If the contract is not enforced, appellee will suffer forfeiture of

the taxes she and her husband paid, the $2,800 they tendered under the contract, and the benefits of her husband's labor on the farm. Appellee attempted to cure default repeatedly, and since the contract has not expired, the default can be cured by tendering the purchase price.

As to the elements of good faith and fair dealing, a few observations are called for. First, this was not an arm's length transaction between strangers. Appellant admitted that she wanted to give the land to her son and that she was aware that appellee's name was on the contract. She said at the deposition that she considered the contract valid, however, only as to her son and that she refused to honor it after he died despite the fact that appellee had as much legal right to enforce the contract as Larrison had. Specifically, appellant said that she would have considered "the contract in effect if he [Larrison] would have come forward." Deposition of Alice Gray, 7/13/94, at 36. She admitted that the only reason that she felt that appellee was not entitled to the land was due to the fact that Larrison died and that this feeling was not altered by the fact that appellee's name was on the contract. *Id.* at 38, 39.

We also note that throughout her brief, appellant has attempted to give the impression that she was awarded nothing by the equity court. Meanwhile, she was awarded the full amount she agreed to accept in payment for the land under the contract at issue. In 1976, appellant agreed to accept $40,000 for this land from appellee and Larrison. She agreed that this amount would not bear interest. *Appellant* obtained the lawyer who drafted the land sales agreement and admitted that her intent was to give the property to her son. Appellee's name is contained on that document as well as Larrison's name. Appellee is as much entitled to enforce its terms as Larrison was. Thus, we affirm the equity court's determination that appellee's failure to make the required payments under the agreement was not a material breach of its terms under the circumstances presented. Accordingly, we affirm

the judgment of the equity court awarding appellee specific performance of the contract upon tender of $37,200.

Judgment affirmed.