J-A02020-26                    2026 PA Super 21

| | | |
|---|---|---|
| SCOTT HARRIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| HUTCHINSON SPORTSMEN'S CLUB | : | No. 1007 WDA 2025 |
| AND SOUTH UNION TOWNSHIP | : | |

Appeal from the Order Entered July 17, 2025
In the Court of Common Pleas of Fayette County Civil Division at No(s):
2405 of 2022 GD

BEFORE:  STABILE, J., MURRAY, J., and BECK, J.

OPINION BY MURRAY, J.:                    **FILED:  February 4, 2026**

Scott Harris (Appellant) appeals from the trial court's entry of summary judgment in favor of Hutchinson Sportsmen's Club (HSC) and South Union Township (the Township), and dismissing Appellant's action for damages for personal injuries he sustained from a fall on a road located on HSC's property. After careful review, we affirm.

The trial court summarized the underlying facts as follows:

On September 7[], 2021, … [Appellant] decided to take his [adult] son's electric bicycle for a ride.  It was [Appellant's second] time on the [bicycle], and he had been riding for approximately forty-five minutes in the general area around the Sheepskin Trail and Hutchinson Park in South Union Township, Fayette County, Pennsylvania, when he approached a speed bump in an area of a roadway later identified as "Gun Club Road[."  Appellant] was at the far-right side of the road, almost off the pavement, attempting to avoid a "giant hole[,]" when his handlebars turned to the right, his left hand came off the handlebars, and he fell.   [Appellant] landed in the gravel of the parking lot adjoining the side of the road and suffered injuries, including fractured bones in both arms.

Trial Court Opinion, 7/18/25, at 1-2 (footnotes omitted).

On December 16, 2022, Appellant filed a complaint against HSC, the Township, Fayette County, and the Pennsylvania Department of Transportation (PennDOT). Relevant to this appeal, Appellant alleged a cause of action against HSC for negligence. Appellant averred that on September 7, 2021, while "lawfully operating his electric bicycle along 65 Reservoir Road, Uniontown,"[1] Pennsylvania, he, "[s]uddenly and without warning[,] struck a hidden and/or inconspicuous speed bump or protrusion which caused him to be violently thrown from his bicycle." Complaint, 12/16/22, ¶¶ 4, 7, 8. Appellant claimed that HSC acted negligently

    a. in failing to provide any warning, or providing inadequate warning, to bicyclists using the at-issue road where a raised bump, buckle or protrusion was present and allowed to persist for an unreasonable amount of time, creating a dangerous, defective, hazardous, and unsafe [*sic*];

    b. in failing to post a sign or other warning advising bicyclists of a reasonable speed and direction in which the road should be negotiated given the unsafe condition of the dangerous, defective, hazardous, and unsafe road;

    c. in failing to cordon off, block access, or not permit bicyclists to utilize the road where a raised bump, buckle, or protrusion existed;

    d. in failing to provide a detour route so that bicyclists would not be permitted to access the road;

---

[1] At his deposition, Appellant conceded that his accident occurred on Gun Club Road, and not 65 Reservoir Road. Township's Motion for Summary Judgment, 2/6/25, Exhibit B (Deposition of Appellant), 2/15/24, at 121.

e.  in failing to oversee, review, and/or inspect the road for defects on the road that could place bicyclists at risk of harm;

f.  in permitting a hazardous condition characterized by a raised bump, buckle, or protrusion, to remain on the at-issue road.

g.  in failing to ensure that the speed bump or hump was compliant with local and state regulations pertaining to the same;

h.  in failing to act in a reasonable manner and correct the hazardous condition of the road;

i.  in failing to act in a reasonable manner and correct the hazardous condition on the road, characterized by absent, unreasonably dangerous and/or defective sign placement to warn bicyclists of the unsafe condition of the road;

j.  in failing to supervise and oversee its authorized agents, ostensible agents, servants, employees, contactors, subcontractors, and assignees to ensure that the at-issue road met or exceeded all State standards for safety;

k.  in failing to otherwise protect [Appellant] from a foreseeable risk of injury that [HSC] knew or should have known was likely to occur;

l.  in failing to provide other adequate safeguards against injury to bicyclists, specifically [Appellant]; and

m. in otherwise failing to take the required precautions for invitees and failing to protect [Appellant] from harm under the Restatement (Second) of Torts.

*Id.* ¶ 17 (capitalization modified). Appellant claimed that as a result of HSC's negligence, he sustained personal injuries and damages. *Id.* ¶ 18.

HSC, the Township, PennDOT, and Fayette County each filed answers, new matters, and counter-claims, to which Appellant filed responses. The matter proceeded to discovery, which included the depositions of Appellant;

- 3 -

South Union Township Supervisor Rick Vernon (Mr. Vernon); and HSC Treasurer William Large (Mr. Large).[2, 3]

At his deposition, Appellant testified that on September 7, 2021, at around 5:00 p.m., he decided to take a ride on his son's electric bicycle. Township's Motion for Summary Judgment, 2/6/25, Exhibit B (Deposition of Appellant), 2/15/24, at 34-35. According to Appellant, his son had owned the bicycle for approximately two months. *Id.* at 36. Appellant indicated he had ridden the bicycle on one prior occasion, for about two minutes. *Id.* at 37.

_____

[2] Appellant included within his reproduced record all three of the aforementioned deposition transcripts. However, only Appellant's and Mr. Large's deposition transcripts were included in the certified record, as exhibits to the Township's motion for summary judgment. *See* Township's Motion for Summary Judgment, 2/6/25, Exhibits B (Deposition of Appellant) and C (Deposition of Mr. Large); *see also Kroptavich v. Pa. Power & Light Co.*, 795 A.2d 1048, 1068 (Pa. Super. 2002) (concluding deposition and business records attached as exhibits to the defendant's motion for summary judgment, "were properly made part of the certified record." (citations omitted)). Mr. Vernon's deposition, which was only included within Appellant's reproduced record, is not a part of the certified record. *See Mazzarese v. Mazzarese*, 319 A.3d 586, 596 (Pa. Super. 2024) ("[A]ny documents that are contained in the reproduced record but are not a part of the official certified record do not exist." (citation omitted)); *see also* Pa.R.A.P. 1921, Note ("An appellate court may consider only the facts which have been duly certified in the record on appeal." (citation omitted)). In its response to Appellant's brief in opposition to summary judgment, the Township indicated that Appellant attached Mr. Vernon's deposition to his response to the Township's motion for summary judgment. Township's Response, 3/19/25, at 4 (unpaginated). However, as discussed *infra*, Appellant merely submitted his response to the trial court's chambers, and did not file his response of record. Consequently, we do not consider Mr. Vernon's deposition testimony.

[3] On August 27, 2024, pursuant to a joint stipulation filed by Fayette County, the parties agreed to discontinue, and dismiss without prejudice, Appellant's civil actions as to Fayette County and PennDOT.

- 4 -

Appellant testified that when the accident occurred,

I was almost off of the road, almost, but I was still on the roadway. When I fell over, I ended up in the gravel and the bike ended up on the road.

*Id.* at 49. Appellant stated, "I was trying to avoid the giant hole." *Id.*

Appellant elaborated,

I was trying [to] rid[e] over the area [identified in Exhibit C, depicting the location of Appellant's fall]; I was trying to avoid the area four or five feet to the left of the area … which would be straight up the [area depicted in Exhibit C], because the hole was three or four inches deep in that area, and it was only an inch or so deep where I was riding.

*Id.* at 51. According to Appellant,

I steered to the right side of the road, almost to the edge, within one foot of the edge of the road[,] … maybe a foot-and-a-half; that's all I can tell you. I tried to avoid the biggest part of the hole.

*Id.* at 62. Further, Appellant stated,

You could see … I was avoiding the places that [were] the deepest and looking for the lesser … evil.

*Id.* at 71.

Significantly, Appellant admitted that nothing prevented him from seeing the hole on the road, and that he "obviously avoided the deepest part of it, so, yes, I kind of saw it." *Id.* at 55; *see also id.* (Appellant testifying that, "[a]s a matter of fact, you can go on [real estate website] Zillow[.com] and you can see [the hole in the road] from space."). Appellant acknowledged he did not attempt to use the electric bicycle's brakes prior to hitting the hole.

*Id.* at 58; *see also id.* at 72 (Appellant testifying, "I could bring my bike to a stop at any time []. … [I]t happened [in] a split second.").

Appellant testified he was traveling approximately two to four miles per hour (*i.e.*, "just enough to stay upright") when he hit the hole. *Id.* at 52. Appellant stated the bicycle was being propelled at the time by pedaling, and not by the bicycle's electric motor. *Id.*

Appellant further confirmed that at the time of the accident, he observed a sign on the road stating "Private property. No throughway. Members only. Violators will be prosecuted" (the sign). *Id.* at 69. Appellant testified that prior to the incident, he was aware that HSC was a "members only property." *Id.* at 81. Nevertheless, Appellant acknowledged his intention to ride through the HSC property. *Id.* at 81-82. Appellant agreed the incident took place on Gun Club Road. *Id.* at 99. Appellant stated he decided to turn around because the sign stated, "No Trespassing" and "No Throughway." *Id.* at 108; *see also* Exhibit C (a photograph produced by Appellant in discovery and entered into evidence at Appellant's deposition, depicting the sign, which reads "PRIVATE PROPERTY / NO THROUGHWAY / MEMBERS ONLY / VIOLATORS WILL BE PROSECUTED").[4]

---

[4] Although the parties presented numerous photographs during Appellant's deposition, only three are contained within the certified record (attached as exhibits to HSC's and the Township's motions for summary judgment), which the parties designated as follows: (1) "Exhibit C," described above; (2) "Harris Exhibit D," depicting the location where Appellant fell; and (3) "Exhibit 3,"
*(Footnote Continued Next Page)*

Appellant subsequently described the cause of his fall as follows:

[T]he [speed bump] I crashed on didn't seem proper; that's all I can say.

I don't even know if it is a speed bump. It could be a pipe under the road there, I don't know. I just thought it was a speed bump because it runs the … width of the road.

*Id.* at 110.

Although he questioned the safety of the elevated concrete or "speed bump" on Gun Club Road, Appellant alternatively testified that a "hole" in the road caused his fall, as described in the following exchange:

[Township attorney]: … [Y]ou have talked about a speed bump and you have talked about a hole; did … your bike contact a speed bump or a hole or something different at the time that you lost control?

[Appellant]: Whatever you want to call it, whether I hit the hole, speed bump, depression, buckle, crevice; whatever you want to call it.

Q. So whatever it was, is it fair to say it was something that was below the grade of the ground as opposed to – and I'm asking for a distinction[,] because a speed bump makes you think of something that goes up and over the grade of the ground.

A. Well, yeah. Well, it – yeah, okay.

….

Q. My question is, if this speed bump that you have been talking about being involved in your accident, if that had been painted, would that have made any difference about what you did or where you went at the time?

_____

depicting a panned-out view of the location where Appellant fell. *See* Township's Motion for Summary Judgment, 2/6/25, Exhibit B (Deposition of Appellant), 2/15/24, at 68-69, 103-05, 119.

....

A.    You can't paint a hole.

***Id.*** at 109-10.

Mr. Large also testified by deposition.  Mr. Large indicated that HSC owns approximately one-quarter mile to a mile of Gun Club Road.  Township's Motion for Summary Judgment, 2/6/25, Exhibit C (Deposition of Mr. Large), 8/20/24, at 14.  According to Mr. Large, HSC owns Gun Club Road "south of the club to Brownfield Road, approximately." ***Id.*** at 15.  Mr. Large confirmed that HSC owns the portion of Gun Club Road on which Appellant fell. ***Id.***

Mr. Large testified that HSC does not maintain Gun Club Road. ***Id.*** Rather, "[i]t's unmaintained, unless the [T]ownship takes care of some problems with it." ***Id.*** Mr. Large did not recall the Township hiring anyone to maintain Gun Club Road. ***Id.*** at 16.  However, he did recall the Township fixing potholes on the road. ***Id.*** Although he travels on Gun Club Road every day, Mr. Large had no knowledge of anyone inspecting the road. ***Id.*** at 17.  Mr. Large testified that the raised section of Gun Club Road at issue has been present for over 31 years. ***Id.*** at 18.  According to Mr. Large, the raised strip is intended to slow down traffic. ***Id.*** Mr. Large testified that HSC has approximately 2,600 members. ***Id.*** at 19.  Mr. Large further indicated that he received no complaints regarding potholes on Gun Club Road. ***Id.*** at 21.

Mr. Large confirmed the presence of a sign on Gun Club Road designating it as private property, prohibiting trespassers, and stating that the property permits access to "[m]embers only." ***Id.***

On February 3, 2025, HSC filed a motion for summary judgment. On February 6, 2025, the Township filed its own motion for summary judgment. Appellant submitted responses to each motion.[5] After consideration of oral arguments and additional briefs, on July 17, 2025, the trial court issued an opinion and order granting the motions for summary judgment filed on behalf of the Township and HSC. Appellant timely appealed. Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) concise statement.[6] The trial court

---

[5] As the trial court observed, "[t]hough [Appellant] provided his Responses to the two [m]otions [for summary judgment] to the [c]ourt's chambers …, they were not filed of record." Trial Court Opinion, 7/18/25, at 1 n.2. We note the Rules of Civil Procedure require an adverse party to **file** a response within thirty days after service of the motion. Pa.R.C.P. 1035.3(a). "Summary judgment may be entered against a party who does not respond." ***Id.*** § 1035.3(d). ***But see id.*** § 1035.3(e)(1) ("Nothing in this rule is intended to prohibit a court, at any time prior to trial, from ruling upon a motion for summary judgment without written responses or briefs if no party is prejudiced."); ***see also Payton v. Pa. Sling Co.***, 710 a.2d 1221, 1224 (Pa. Super. 1998) (observing that while the trial court may enter summary judgment for failure of the adverse party to file an appropriate response, it is not required to do so). Neither HSC nor the Township requested summary judgment based on Appellant's failure to file his responses of record.

[6] In his Rule 1925(b) concise statement, Appellant raised several issues, most of which involved solely HSC, but two of which generally related to both HSC and the Township. ***See*** Concise Statement, 8/27/25, ¶¶ 1-6. However, in his appellate brief, Appellant lists only HSC as an appellee, and does not address the trial court's basis for granting the Township's motion for summary judgment. ***See generally*** Appellant's Brief. On this basis, we permitted the
*(Footnote Continued Next Page)*

subsequently filed a statement in lieu of a Rule 1925(a) opinion, directing this Court to the reasoning set forth in its July 17, 2025, opinion.

Appellant presents the following issues for our review:

1.      Whether the trial court erred in finding that Appellant failed to offer sufficient evidence to establish a *prima facie* case against [HSC]?

2.      Whether the trial court erred in making factual conclusions properly left to a jury as to [HSC's] inspection, maintenance, care and control of Gun Club Road, as well as Appellant's status, knowledge and conduct at the time of injury[?]

3.      Whether the trial court erred in failing to examine and consider the record in the light most favorable to the nonmoving party, Appellant[?]

4.      Whether the trial court erred in finding that Appellant was a trespasser as to [HSC], at the time and location of the incident?

5.      Whether the trial court erred in finding that Appellant was not a licensee or public invitee of [HSC] at the time and location where he fell[?]

_____

Township not to participate in this appeal.  **See** Order, 12/22/25 (construing the Township's request, made in its appellate brief, "that it be dismissed from this appeal with prejudice[,]" as a request not to participate in this appeal or attend oral argument (quoting Township's Brief at 5)).  We further conclude that Appellant has waived for appellate review any claims related to the Township.  **See In re Estate of Anderson**, 317 A.3d 997, 1003 (Pa. Super. 2024) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived." (citation omitted)).  Accordingly, we affirm the portion of the trial court's July 17, 2025, order granting the Township's motion for summary judgment.

Because we are not asked to review the entry of summary judgment in favor of the Township, we decline to transfer this case to Pennsylvania's Commonwealth Court.  **See** 42 Pa.C.S.A. § 762 (providing the Commonwealth Court has exclusive of appeals in civil actions against Commonwealth agencies and local governments).

6.  Whether the trial court erred in holding that even if []
    Appellant was a licensee or public invitee[, HSC] would not be
    liable for [] Appellant's fall?

Appellant's Brief at 3-4 (issues reordered).

Our standard of review of an order granting summary judgment is well

settled:

> We view the record in the light most favorable to the nonmoving
> party, and all doubts as to the existence of a genuine issue of
> material fact must be resolved against the moving party.  Only
> where there is no material fact and it is clear that the moving party
> is entitled to judgment as a matter of law will summary judgment
> be entered.  Our scope of review of a trial court's order granting
> or denying summary judgment is plenary, and our standard of
> review is clear: the trial court's order will be reversed only where
> it is established that the court committed an error of law or abused
> its discretion.

*Shellenberger v. Kreider Dairy Farms, Inc.*, 288 A.3d 898, 905 (Pa.

Super. 2023) (quoting *Siciliano v. Mueller*, 149 A.3d 863, 864 (Pa. Super.

2016) (citation omitted)); *see also Bourgeois v. Snow Time, Inc.*, 242

A.3d 637, 650 (Pa. 2020) ("The trial court is [] required to resolve any doubts

as to the existence of a genuine issue of material fact against the moving

party and may grant summary judgment only where the right to such a

judgment is clear and free from doubt." (citation and quotation marks

omitted)).

We further recognize the following:

> "Where the non-moving party bears the burden of proof on an
> issue, he may not merely rely on his pleadings or answers in order
> to survive summary judgment." *Babb v. Ctr. Cmty. Hosp.*, 47
> A.3d 1214, 1223 (Pa. Super. 2012) (citation omitted).  Further,
> "failure of a non-moving party to adduce sufficient evidence on an

- 11 -

issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." ***Id.***

> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

> ***Id.*** (quoting ***Reeser v. NGK N. Am., Inc.***, 14 A.3d 896, 898 (Pa. Super. 2011) (citations omitted)).

***Shellenberger***, 288 A.3d at 905-06 (internal citations modified) (quoting

***Truax v. Roulhac***, 126 A.3d 991, 997 (Pa. Super. 2015)).

In his first issue, Appellant argues the trial court erred by concluding Appellant failed to set forth a *prima facie* case for negligence against HSC. Appellant's Brief at 12. Appellant maintains that HSC is liable to him based on his status as either an invitee or licensee. ***Id.*** at 12. Appellant claims

> the record supports that Appellant has established a *prima facie* case against [HSC] whether he is considered an invitee or a licensee. First, [HSC] knew or should have known that the raised portion of Gun Club Road posed a dangerous risk to both licensees and invitees. Indeed, Gun Club Road is travelled every day, and the raised portion on which Appellant fell has existed for at least thirty-one (31) years.

> Second, [HSC] should have expected that invitees and licensees would not realize the danger that the raised portion of the road posed. Again, Gun Club Road is travelled every day, and [HSC] has stated that the purpose of the raised portion of the road is to slow traffic down. However, it was not apparent to Appellant that the raised portion of the road was even a speed bump at all. … [T]he danger that the raised portion [of Gun Club Road] posed

- 12 -

was not apparent to Appellant, and he had no idea it would cause him to fall.

Appellant's Brief at 14-15 (record citations omitted).

Appellant further argues that the record supports a finding that HSC failed to exercise reasonable care in inspecting and maintaining Gun Club Road, and that Appellant suffered injury as a result of that failure. *Id.* at 15-16.

Despite claiming, in his principal brief, that the "raised portion of the road" was the dangerous condition that caused his injuries, in his reply brief, Appellant concedes that the road condition that caused his fall is unknown to him. Appellant's Reply Brief at 10-11. Acknowledging the open and obvious nature of the "hole" and "raised portion of road" on HSC's property, Appellant claims his deposition testimony established that neither condition caused his fall. *Id.* at 10. Instead, Appellant maintains, in his attempt to avoid these conditions in the road, Appellant "encountered another condition in the road, not open and obvious, which actually caused his fall." *Id.* at 10-11. Appellant concludes that,

> [b]ecause Appellant could not definitively state what hazard in the road caused his fall, reasonable minds could differ … as to the cause of the incident, but the open and obvious conditions in the road, [*i.e.,*] the raised portion of the road and the deep hole, were avoided and the condition that caused the accident was not open and obvious or apparent and easily recognized by a reasonable person in Appellant's position. Thus, the question should have been a fact question for the jury.

*Id.* at 11.

HSC counters that "a landowner cannot be liable for injuries sustained by [a] plaintiff via a condition of land that the plaintiff knew existed and intentionally traversed." HSC's Brief at 20 (citing Restatement (Second) of Torts § 342, 343A(1)). According to HSC, "[f]rom Appellant's own testimony, it is clear that he was aware of the alleged dangerous condition at the time of the incident[,] and his view of any such condition was unobstructed." *Id.* at 22. HSC therefore maintains that, regardless of Appellant's status as an entrant on HSC's property, Appellant "is not entitled to recover for injuries incurred from hazards [of] which he was aware [] and intentionally traversed." *Id.* at 23.

Having outlined the parties' arguments, we turn to the applicable law. "Under Pennsylvania law, [t]he mere fact that an accident occurred does not give rise to an inference that the injured person was the victim of negligence." *Toro v. Fitness Int'l LLC*, 150 A.3d 968, 976 (Pa. Super. 2016) (citation and internal quotation marks omitted). To establish a viable cause of action for negligence, the plaintiff must demonstrate the following four elements:

> (1) a duty or obligation recognized by the law that requires an actor to conform his actions to a standard of conduct for the protection of others against unreasonable risks; (2) failure on the part of the defendant to conform to that standard of conduct, *i.e.*, a breach of duty; (3) a reasonably close causal connection between the breach of duty and the injury sustained; and (4) actual loss or damages that result from the breach.

*Shellenberger*, 288 A.3d at 906 (citation omitted). "Thus, the mere fact that a party was injured is not enough to entitle that person to damages." *Id.*

- 14 -

"A plaintiff must show that a defendant owed a duty of care, and that this duty was breached. Indeed, **the issue of whether the defendant owed a duty of care to the plaintiff is the primary question in a negligence suit**." *Id.* (emphasis added; citations omitted).

> At common law, [t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the latter is a trespasser, licensee, or invitee. Pennsylvania law defines invitee as follows:
>
> (1) An invitee is either a public invitee or a business visitor.
>
> (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
>
> (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land.

*Id.* at 907-08 (citations and quotation marks omitted).

However, our Supreme Court has recognized that a possessor of land "is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (quoting Restatement (Second) of Torts § 343A).

> A danger is deemed to be "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." Restatement, *supra*, § 343A comment b. For a danger to be "known," it must "not only be known to exist, but … also be recognized that it is dangerous and the probability and gravity of the threatened harm must be

- 15 -

appreciated." ***Id.*** Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion. ***See*** Restatement, *supra*, § 328B comments c and d.

***Id.*** at 123-24; ***see also id.*** at 124 (concluding the plaintiff "failed to establish the element of duty essential to a *prima facie* case of negligence," where, *inter alia*, the plaintiff's own testimony showed the existence of the dangerous condition on defendant's property was obvious).

Regarding causation, "[p]roof of injury alone, without more, or of the existence of the negligent condition without showing that it caused the injury complained of, is insufficient to establish a case of liability." ***Sherk v. Daisy-Heddon, a Div. of Victor Comptometer Corp.***, 450 A.2d 615, 619 (Pa. 1982) (citations omitted).

Significantly, we have observed that,

> [w]here there are a number of depressions in a pavement, for some of which the municipality and the property owner might be liable if an injury resulted, but would not be if an accident resulted from others, **the burden is on the plaintiff to identify a defect imposing liability, as the specific cause of the injury**.

***Frazier v. City of Pittsburgh***, 15 A.2d 499, 500 (Pa. Super. 1940) (emphasis added).

Here, the trial court concluded that, regardless of Appellant's status as an entrant upon HSC's property, Appellant failed to set forth a *prima facie* case for negligence. Trial Court Opinion, 7/17/25, at 9.

> A possessor of land is liable for bodily harm to a licensee for a natural or artificial condition on the land only if he a) knows of the

- 16 -

condition, realizes it involves an unreasonable risk, and has reason to believe that the licensee will not discover the condition or realize the risk[;] and b) invites or permits [the licensee] to enter or remain upon the land without exercising reasonable care to [] make the condition reasonably safe, or [] to warn [the licensee] of the condition and the risk involved therein. *See Oswald v. Hausman*, 548 A.2d 594, 599 (Pa. Super. 1988). The liability to a licensee is not based upon a duty to maintain the land in a safe condition[,] but rather on the duty to disclose the risk they will encounter if they accept his invitation or permission.

[Appellant's] deposition testimony does not establish whether he lost control of the [electric bicycle] due to the speed bump or due to a pothole in the road near the speed bump. … [Appellant] has not cited any evidence in the record to show that [HSC] knew of the condition, realized it involved an unreasonable risk[,] and had reason to believe that the condition would not be discovered or that a person would not realize the risk. On the contrary, **the conditions in the road (both the hole and the speed bump) were clearly visible;** [**Appellant**] **admitted that he saw them and steered toward the right-hand side of the road to avoid the deepest part of the hole**. Further, [Appellant] has not established in the record that the speed bump was a dangerous condition, or if, in fact, the speed bump was even the actual cause of [Appellant's] accident, as a speed bump is typically used as a safety measure to slow down traffic.

Bicycling on a roadway carries certain known risks, and riding an unfamiliar electric power[-]assisted [bicycle] on a roadway arguably carries additional risks due to the higher speeds possible and additional complexity in operating the [bicycle]. Encountering potholes and speed bumps are reasonably foreseeable conditions and risks a bicyclist may expect to encounter. … Therefore, even if the [c]ourt were to consider [Appellant] a licensee at the time of the accident, [Appellant] still failed to establish liability on [HSC's] part.

*Id.* at 9-11 (citation modified; paragraph break omitted; emphasis added);

*see also id.* at 8 (the trial court noting that Appellant testified that "the day

of the accident was a bright and sunny day" (citing Township's Motion for

Summary Judgment, 2/6/25, Exhibit B (Deposition of Appellant), 2/15/24, at 35)).

The trial court's factual findings are supported by the record. Viewing the evidence in the light most favorable to Appellant, we agree with the trial court that no genuine issues of material fact exist as to HSC's liability to Appellant, based on (1) the known and obvious nature of the alleged hazard, and (2) Appellant's failure to identify the condition that caused his accident. **See Shellenberger**, 288 A.3d 905.

In his deposition testimony, Appellant alternatively identifies, as dangerous conditions causing his fall, a "hole" and "speed bump." Township's Motion for Summary Judgment, 2/6/25, Exhibit B (Deposition of Appellant), 2/15/24, at 109. As outlined above, the trial court's determination that Appellant was aware of the known and obvious nature of these purportedly hazardous conditions is supported by Appellant's own deposition testimony. **See Gray v. Gray**, 671 A.2d 1166, 1172 n.1 (Pa. Super. 1996) ("[S]ummary judgment may be granted if the moving party supports his motion for summary judgment by the use of depositional admission of the opposing party." (emphasis and citations omitted)).

Appellant plainly observed the complained-of conditions, and, rather than bring his electric bicycle to a stop, attempted to travel around them. **See** Township's Motion for Summary Judgment, 2/6/25, Exhibit B (Deposition of Appellant), 2/15/24, at 51, 54, 55, 62, 71-72. Appellant acknowledged the

open and obvious nature of the hazardous conditions he claims caused his injuries, and the uncontroverted evidence establishes that he appreciated potential harm. **See Carrender**, 469 A.2d at 123; **see also** Appellant's Reply Brief at 10 (Appellant stating the "hole" and "raised area in the road" were "open an obvious conditions"). Accordingly, we agree with the trial court that Appellant failed to establish that HSC owed him a duty of care, and therefore, failed to set forth a *prima facie* case of negligence.

Moreover, the trial court's finding that Appellant's deposition testimony failed to identify the condition that allegedly caused his fall is supported by the record. Rather than strengthen his negligence claim, Appellant's attempt on appeal to recast the cause of his injuries as some unknown hazardous condition necessarily defeats it. **See Frazier**, 15 A.2d at 500 ("[T]he burden is on the plaintiff to identify a defect imposing liability, as the specific cause of the injury."). Further, as Appellant has failed to establish what caused his fall, he cannot establish that HSC "had a hand in creating the harmful condition, or [] had actual or constructive notice of such condition." **Estate of Swift by Swift v. Northeaster Hosp.**, 690 A.2d 719, 723 (Pa. Super. 1997); **see also Smith v. Bell Tel. Co.**, 153 A.2d 477, 479-80 (Pa. 1959) ("[T]he jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but [] there must be evidence upon which logically

its conclusion may be based."). Based on the foregoing, Appellant's first issue entitles him to no relief.[7]

In his second and third issues, which we consider together, Appellant claims that the trial court erred by (1) making factual findings that should have been submitted to a jury; and (2) failing to examine the record in the light most favorable to Appellant. Appellant's Brief at 21, 23. We disagree.

As set forth at length above, in arriving at its conclusion that Appellant failed to set forth a *prima facie* case for negligence, the trial court relied upon admissions in **Appellant's** deposition testimony. *See Carrender*, 469 A.2d at 123 ("Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion." (citation omitted)). Upon review, we discern no abuse of the trial court's discretion in considering Appellant's own statements, and its determination, derived therefrom, that no genuine issues of material facts exist as to HSC's liability in this negligence action. *See Shellenberger*, 288 A.3d at 905; *Gray*, 671 A.2d at 1172 n.1. Appellant's second and third issues merit no relief.

Order affirmed.

_____

[7] Finding no error in the trial court's determination that Appellant failed to set forth a *prima facie* case for negligence for the reasons set forth above, we need not consider Appellant's fourth, fifth, or sixth issues, which each pertain to Appellant's status as an entrant upon HSC's property.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  2/4/2026